### MARTIN et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. December 6, 1920.)

No. 3509.

Internal revenue ⊚⇒47—Conviction for operating unregistered still sustained by evidence.

Evidence *held* to sustain a conviction for operating an unregistered still.

In Error to the District Court of the United States for the District of Montana.

Criminal prosecution by the United States against C. J. Martin and J. S. Newman. Judgment of conviction, and defendants bring error. Affirmed.

O'Leary & Doyle, of Great Falls, Mont., for plaintiffs in error.
Walter W. Patterson, U. S. Atty., of Helena, Mont.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

HUNT, Circuit Judge. Martin and Newman, plaintiffs in error, were tried and convicted of having had in their possession and custody and under their control at Great Falls, Mont., a certain still set up, which they failed and neglected to register with the collector of internal revenue of the United States for the proper collection district, by subscribing and filing with the collector duplicate statements in writing setting forth the particular place where the still was so set up, the kind and cubic contents of the still, the owners thereof and their places of residence, and the purpose for which the still had been and was intended to be used. From a judgment imposing fine and imprisonment, writ of error was sued out.

The only question presented is whether the evidence was sufficient to sustain the conviction. The evidence of the prosecution was that some police officers went to the premises, a two-story brick building surrounded in part by a fence five or six feet high. The first floor was used as a grocery store, kept by defendant Newman; above the store were furnished rooms. There was a back outside stair from the ground to the second story. The officers tried a basement door on the east side of the building, near the sidewalk door leading to the basement, but found it locked. Two of the officers went into the store, and the third went around down the street and into the alley, and took a place for observation. Martin was seen in the lot. After going into a small outhouse near the back of the lot and staying there a minute, he went back to the store and started to go toward the door at the rear, then changed his course, and went over the fence and up the back stairs leading to the second story of the building. The officers then went upstairs and found Martin in a corner room. The officers took Martin downstairs, and one crawled through a window and found a door in the basement fastened with a wooden bar. He opened the door, and found an oil stove with a plate on it, and two burners going underneath.

The apparatus, proven to be a still, was produced in court, and was explained as having burners upon which was a boiler, to which was connected a coil in the middle of a tank. When found, there was water in the tank running from a hose. The end of the coil extended to a receptacle out of which whisky was dropping. They found receptacles containing whisky. Other things found included charcoal, a funnel, some barley in a sack, stoppers, corks, plugs, root beer, hops, yeast, filtering paper, and sugar. Martin told the officers that he was making root beer, and as a fact there was some root beer found some 10 or 15 feet from the still.

One of the police officers said that upon the day of the arrest defendant Newman was in the store; that when the officers asked Newman to let them into the basement, Newman said he did not have the key; that he had rented the basement to Martin, and that Martin would be back soon; that when they went upstairs there was no re-

sponse to the knocking upon the door, whereupon the officers opened the door and found Martin; that when Martin was asked what his business was, he said he was making root beer.

A witness, who happened to be visiting the family of Newman when the police officers went to the premises, said that she saw the police officer walk out of the building, and that then Newman went to the back of the room with a hammer in his hand, and that he knocked on an empty sack in a corner, or in the middle of the floor; that he gave two or three knocks, then put the hammer down, and went about his business. It appeared that the pounding was behind the door in the corner, and at a point above that portion of the basement in which the still was located.

Defendant Newman stated that he did not own the building, and had not exercised control over it, and had not acted as the agent of his son, who, he said, was the owner. The son said he had bought the property, which was worth about $18,000, when he was about 15 years old, and was the owner at the time of the arrest, and that his father was simply looking after the grocery store for him, the son. He further testified that he was a clerk in another grocery store; that he rented the basement to Martin for a place to make root beer and soft drinks, but about the 17th or 18th of July he agreed with Martin that one Sawyer would be acceptable as a tenant, if he would pay the rent in advance, and that on the 18th Sawyer did pay him a month's rent in advance, but that he never saw Sawyer after Martin was arrested. Witness said that Sawyer had a lock on the outside door, although there were two means of getting to the basement, the inside leading from the store, which was locked, and the door on the outside; that defendant Martin rented two rooms in the second story, or apartment part, of the building. The person referred to as Sawyer was not presented as a witness. Both defendants denied any knowledge of the operation of the still in the basement.

We are of the opinion that there was sufficient evidence to submit to the jury, and that the question of guilt or innocence depended upon the credibility of the witnesses. Inasmuch as the instructions are not included in the record, we assume that the law was properly stated to the jury, and in view of the verdict rendered upon the evidence, this court will not set aside the judgment.

Affirmed.